| | |
|---|---|
| In re<br><br>　　VINH NGUYEN<br>　　　*aka* VINCE NGUYEN,<br><br>　　　　　　Debtor. | Case No. 22-50907 MEH<br>Chapter 7<br>Hon. M. Elaine Hammond<br><br>**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION FOR AUTHORITY TO ENTER INTO AGREEMENT CONCERNING INTEREST IN REAL PROPERTY SUBJECT TO OVERBID, AND FOR APPROVAL OF DEBTOR'S SETTLEMENT AND GLOBAL RELEASE WITH PAUL NGUYEN**<br><br>[No Hearing Required Unless Requested] |

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE THAT** Fred Hjelmeset, solely in his capacity as the duly appointed and acting Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate of Vinh Nguyen *aka* Vince Nguyen ("**Estate**"), has filed a motion for an order authorizing him to enter into an Global Settlement Agreement and General Release ("**Agreement**")[1] with debtor, Vince Nguyen ("**Debtor**"); Paul Nguyen aka Paul Kim Phong Nguyen ("**Creditor**") and Empire Investments, LLC, a Wyoming limited liability company ("**Empire**"). In general, the Agreement concerns: (i) the abandonment to the Debtor of the Estate's right, title and interest in and to the residential real property commonly referred to as 12329 Kosich Place, Saratoga, California, 95020 ("**Residence**") in exchange for a $300,000 payment to the Estate from Empire; and (ii) the payment by Empire of $510,000 to Creditor (a) in full satisfaction of a promissory note secured by a deed of trust against the Residence, (b) the dismissal, with prejudice, of multiple claims and litigation by and between Creditor on the one hand and Debtor and his non-debtor spouse ("**Spouse**") on the other hand, and (c) a general release of claims by and between Creditor on the one hand and Debtor and his Spouse on the other hand. If the Agreement is approved by the Court, it will result in the Estate receiving $300,000 and waiver of the claims filed by Creditor against the Estate. In exchange, the Trustee shall abandon all of the Estate's right, title and interest in and to the Residence to the Debtor.

**Background**

The Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on October 4, 2022 ("**Petition Date**"). On December 9, 2022, the Bankruptcy Court converted the case to Chapter 7, and the Trustee was appointed to administer the assets of the Estate. Prior to the Petition Date, the Debtor entered into an agreement with, by which Empire conveyed to the Debtor a 10% ownership interest in the Residence. Under the provisions of the agreement with Empire, the Debtor is to pay $300,000 to Empire for the 10% interest. A Grant Deed conveying to the Debtor a 10% interest in the Residence was recorded with the Santa Clara County Recorder's Office as Instrument No. 25387778. After consulting with an experienced real estate agent, the Trustee concluded that the Estate's 10% interest in the Residence was worth approximately $300,000.[2]

---

[1] A true and correct copy of the Agreement is attached as Exhibit B to the Motion for Authority to Enter Into Agreement Concerning Interest in Real Property Subject to Overbid, and for Approval of Debtor's Settlement and Global Release With Paul Nguyen. The summary of the Agreement set forth in this Notice and in the Motion are for informational purposes only and in all circumstances the Agreement shall control. Parties seeking a copy of the Agreement should contact aworthing@rinconlawllp.com.

[2] The Estate's 10% interest in the Residence arose immediately before filing of the bankruptcy petition. Based on the real estate agent's estimated valuation of the property, declining market conditions, and high mortgage interest rates, the Trustee believes that a $3 million gross valuation for the Residence is likely correct. The Residence is currently occupied by a tenant whose lease runs through May 31, 2023. To date, the tenant has declined to allow the Trustee's agent to inspect the Residence.

According to a preliminary title report for the Residence, the Residence is encumbered by multiple liens, including a deed of trust in favor of Creditor ("**Deed of Trust**"), which deed secures a promissory note in the original principal amount of approximately $215,000. The Deed of Trust and note in favor of the Creditor have been the subject of years of litigation between the parties.

In 2021, Creditor initiated foreclosure proceedings on the Deed of Trust. The Debtor, Spouse and Empire on the one hand and Creditor on the other hand have been involved in multiple lawsuits, bankruptcy cases, adversary proceedings, objections to claims, and appeals – the majority of which challenged the validity of the Deed of Trust and ability to foreclose. Creditor has filed two proofs of claims against the Estate, identified as claim numbers 3 and 4 ("**Creditor Claims**"). After weeks of arm's length negotiations, the parties entered into the Agreement. Because of the many years of acrimony and litigation between Debtor, Spouse, Empire and Creditor, the parties conditioned the purchase of the 10% interest in the Residence on a global settlement. The Agreement has two parts: (1) Debtor's purchase of the Estate's 10% interest in the Residence for $300,000; and (2) the Debtor and Creditor resolution of all their disputes in exchange for a payment from Empire to Creditor of $510,000.

## The Agreement

Sale of 10% Interest in Residence

Under the terms of the Agreement, the Trustee has agreed to sell and convey to the Debtor all of the estate's right, title and interest in and to the Residence, in exchange for an all-cash payment to the Trustee by Empire in the amount of $300,000.00 ("**Trustee Proceeds**"). Subject overbid and Bankruptcy Court approval of the Agreement, the Trustee shall abandon to the Debtor the Estate's right, title and interest in and to the Residence, **subject to** all liens, claims and interests, is as-is, where-is, with all representations and warranties expressly disclaimed. The Agreement provides that the Debtor waives and relinquishes any claims to or interest in the Trustee Proceeds, including any claims of exemption that he could assert against the Trustee Proceeds. The Agreement **does not include** a release of any of the Estate's claims against any party, including the Debtor, Spouse, or Empire.

Debtor's Settlement with Creditor Paul Nguyen

Under the provisions of the Agreement, the Debtor, Empire and Creditor have agreed to resolve all existing disputes and/or claims between themselves, including pending litigation, foreclosures, and appeals. In addition, Creditor shall release and fully reconvey the Deed of Trust to Debtor and withdraw the Claims filed against the Estate in exchange for the payment from Empire of $510,000.00 ("**Creditor Proceeds**"). The Debtor's agreement with Creditor includes a detailed release.

Payment of the Trustee Proceed and the Creditor Proceeds

Under the provisions of the Agreement, Empire is required to deliver to the Trustee, by wire transfer, the Trustee Proceeds, $300,000, and the Creditor Proceeds $510,000, no later than three (3) business days after the Agreement was executed. The Trustee is receiving the Creditor Proceeds solely as accommodation to Creditor, Debtor and Empire. After the Court authorizes the Trustee to enter into the Agreement, the Creditor is required to deliver to the Trustee a full reconveyance of the Deed of Trust. Following the Trustee's receipt of the reconveyance, the Trustee shall deliver the Creditor Proceeds to the Creditor.

The Trustee requests that the order approving the Agreement include the following provision: "This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

## Sale Subject to Higher and Greater Offer

The Debtor owns a 10% interest in the Residence. Ninety percent of the property is owned by Empire. The Trustee is not aware of any agreement between the Debtor and Empire by which the Debtor has any management role or membership interest in Empire. Therefore, as the Trustee understands it, a party that purchases the Estate's fractionalized interest in the Residence would likely have no say in the operations/management of the property.

Because the Residence is subject to a lease that runs through May 2023, the value of the Estate's fractionalized interest in the Residence may be further diminished. The Trustee believes that the foregoing negatively impacts the value of the Estate's ownership interest in the Residence. Nonetheless, any party that is interested in making an overbid for the Estate's interest in the Residence is welcome to do so pursuant to the following provisions:

The following terms shall apply to all parties seeking to make an overbid for the Residence:

1. On or before **January 27, 2023, 5:00 pm PDT**, bidders must (i) provide evidence to the Trustee at fhtrustee@gmail.com (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com), that they can close and pay the purchase price in cash, (ii) deliver to the Trustee, a $300,000 deposit ("**Deposit**"), and (iii) agree to be bound by the terms of the sale agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer). The Deposit must be delivered by wire transfer. Parties must contact the undersigned for wire instructions.

2. The initial overbid must be at least $320,000 (or $20,000 higher than the Debtor's offer). Thereafter, additional bidding shall proceed in minimum increments of $2,000.

3. In the event that a qualified bidder is not the successful bidder, it may act as a back-up bidder at its last highest offer. The Deposit will be promptly returned to bidders who do not want to act as back-up bidders.

4. Bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies. The bidders must agree and acknowledge that they are purchasing the Estate's 10% interest in the Residence, "as is, where is" with all faults and defects and with no representations or warranties, and subject to all liens, claims and encumbrance.

5. In the event there is an overbid, the overbid auction will occur by telephone on **January 31, 2023, at 1:00 pm, PDT**, with dial-in information provided to all qualified overbidders and the Debtor. Prior to the start of the auction, the Trustee will (i) identify any party or parties that have made a qualified bid for the Residence and (ii) set forth the auction rules on the record, and may amend, modify or alter any bid procedure, rule or provision as the Trustee deems necessary, just or appropriate. The Trustee reserves the right, in his sole and absolute discretion, to refuse bids that do not, in his sole opinion, conform with the terms of the sale, to modify the terms and conditions of the sale or auction, to continue the sale from time to time. Only qualified bid participants may attend the overbid auction. All disputes with regard to the sale or auction will be resolved by the Bankruptcy Court. At the conclusion of the auction, the Trustee, in his sole discretion, will determine the highest and best bid and make a recommendation to the Bankruptcy Court to approve the sale of the Residence.

6. The successful bidder for the Residence must close by tendering the entire purchase price to the Trustee, less a credit for any deposit held by the Trustee, not later than ten (10) days after the sale order is entered. If the successful bidder fails to timely close, it will forfeit its deposit to the Estate for all purposes. In the event of such a default, the Trustee will, without further order of the Court, be free to sell the Residence to another party at the back-up bidder's last highest offer. The back-up bid shall have seven (7) business days, from the date that his/her/its counsel/agent has been notified by email by Trustee's counsel of the default by the original successful bidder, to close escrow. Should the back-up bidder fail to timely tender the purchase price for any reason, they shall be in default, and the deposit that they have tendered to the Trustee shall be forfeited to the Estate for all purposes.

7. If the Debtor is the successful purchaser, the Trustee shall include in the Court order authorizing the Trustee to enter into the Agreement, a provision authorizing the abandonment of the Estate's 10% interest in the Residence to the Debtor. If any other party is the successful purchaser, the Trustee shall deliver a recordable quit claim deed of the Estate's 10% interest in the Residence.

**PLEASE TAKE NOTICE THAT** beginning March 1, 2022, all matters before Judge Hammond will be conducted in person, in the courtroom, unless otherwise ordered by the court. Counsel and interested parties may appear at the hearing either in person or by Zoom. Prior court approval is not required for in person or Zoom appearances. Counsel appearing at the hearing in person or by Zoom will be able to see counsel appearing in the

alternate manner. Any person who is not fully vaccinated and intends to appear in person is required to notify Judge Hammond's courtroom deputy no later than three (3) days prior to the hearing in order to allow the court to determine if additional precautions are required. Any individual exhibiting Covid symptoms is required to attend the hearing by Zoom. Individuals appearing in person my comply with any mask mandate in effect at the time of the hearing in Santa Clara County. Specific procedures for any evidentiary hearings shall be determined by Judge Hammond in consultation with counsel.

Counsel, parties and other interested parties may attend hearings in person or by Zoom. Additional information is available on Judge Hammond's procedures page on the court website: https://www.canb.uscourts.gov/judge/hammond/procedures.

Information on attending hearings by Zoom will be provided on Judge Hammond's calendar posted no later than seven days prior to the hearing date at: https://www.canb.uscourts.gov/judge/hammond/calendar.

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the Trustee entering into the Agreement or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED:   January 13, 2023         RINCON LAW LLP

                                  By:   /s/Gregg S. Kleiner
                                        GREGG S. KLEINER
                                        Counsel for FRED HJELMESET, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA  94104
Telephone No.:  415-672-5991
Facsimile No.:   415-680-1712
Email: gkleiner@rinconlawllp.com